IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

FEB - 5 2018

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

M.N., by and through her Parents,
MICHELLE NORMAN and
CASSIDY NORMAN,

Plaintiff/Counter-Defendant,

v.

Civil Action No. 2:17cv65

SCHOOL BOARD of the
CITY of VIRGINIA BEACH,

Defendant/Counter-Plaintiff.

## OPINION & ORDER

This matter is before the Court on two (2) Motions seeking review of an administrative decision: Plaintiff/Counter-Defendant M.N., by and through her Parents, Michelle Norman and Cassidy Norman's ("M.N.'s" or "Plaintiff/Counter-Defendant's") Motion for Summary Judgment, and Defendant/Counter-Plaintiff School Board of the City of Virginia Beach's ("Virginia Beach's" or "Defendant/Counter-Plaintiff's") Cross-Motion for Summary Judgment. Docs. 52, 54.[1] Because both Parties seek to modify the Hearing Officer's decision in part and to retain it in part, neither Motion completely defends the Hearing Officer's decision. For the reasons stated herein, the Court **GRANTS** both Motions **IN PART**, **AFFIRMING** the decision of the Hearing Officer and further **GRANTING** attorneys' fees to M.N.

---

[1] The Court issued a separate Order regarding missing pages in the administrative record. Doc. 68. The Parties have previously submitted a courtesy copy of the entire record, and the Court has reviewed the missing pages in the courtesy copy, but those pages should also have been filed electronically by now.

# I.   BACKGROUND

This case is an appeal from an administrative hearing conducted by the Virginia Department of Education pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq.  See generally Doc. 1 ("Compl.").  M.N. is a special education student in Virginia Beach's schools.  Doc. 53 at 2.  In 2014–2015, her family moved to the city of Virginia Beach, bringing along an individualized education program ("IEP") from Fairfax County Public Schools.  See Ex. B887–919 (Doc. 28 at 68–100).  She has multiple issues that affect her ability to learn, including the following:

- Right Hemiplegia (paralysis of the right side of the body that is a symptom of an attack on the left side of the brain);
- Cerebral Palsy (causes impaired movement and possibly chronic fatigue and slow performance);
- Neurodevelopmental disorders (including deficits in executive functioning, visual figure-ground, sensory processing secondary to brain hemorrhaging);
- Visual tracking problems (causes eye movements to be slow and/or inaccurate);
- Language disorder (trouble understanding others or sharing thoughts, ideas and feelings);
- Inattentive type of attention deficit hyperactivity disorder (ADHD) (a brain disorder marked by an ongoing pattern of inattention and/or hyperactivity that interferes with functioning or development);
- Developmental coordination disorder (a chronic neurological disorder that can affect planning of movements and coordination as a result of brain messages not being accurately transmitted to the body);
- Learning disorder (LD) (problems that affect the brain's ability to receive, process, analyze, or store information making it more difficult to learn);
- Deficits in higher order reading comprehension (deficits in word reading accuracy and/or reading comprehension);
- Voice projection disorder or Dysphonia (usually characterized by hoarseness, vocal fatigue, raspiness, periodic loss of voice, or inappropriate pitch);
- Deficits in written expression (generally a combination of difficulties in the individual's ability to compose written texts evidenced by grammatical or punctuation errors within sentences, poor paragraph organization, multiple spelling errors, and/or poor handwriting skills);

- <u>Deficits in arithmetic calculation</u> (unable to memorize many basic math facts and/or exhibits weak verbal skills for monitoring the steps of complex calculations);
- <u>Generalized anxiety disorder</u> (characterized by excessive, exaggerated anxiety and worry about everyday life events with no obvious reasons for worry);
- <u>Obsessive compulsive disorder (OCD)</u> (uncontrollable, reoccurring thoughts 'obsessions' and behaviors 'compulsions' that create the urge to repeat actions over and over); and
- <u>Brain Injury</u> (In case, a loss of volume on the left side of her brain that increases her risk for seizures).

Doc. 1-1 ("Hearing Officer's Decision" or "Decision") at 7–8.

The underlying IDEA proceeding resulted from M.N.'s parents' decision to enroll her in Chesapeake Bay Academy ("CBA"), a private school, after determining that Virginia Beach failed to provide her with a free appropriate public education ("FAPE"). Id. at 10–12. When M.N. moved to the city of Virginia Beach, Virginia Beach represented that it could implement the Fairfax IEP. See Ex. B919 (Doc. 28 at 100). In September 2014, M.N. enrolled in fifth grade at Red Mill Elementary School ("Red Mill") in Virginia Beach. Doc. 53 at 4; Doc. 55 at 4; see also, e.g., Ex. B001 (Doc. 22 at 2) (listing Red Mill as the school). After a meeting on October 1, 2014, to address parental concerns, the IEP team at Red Mill agreed on an addendum to the IEP. See Ex. B130 (Doc. 23 at 10). That same month, one of M.N.'s teachers, Julie Harrison ("Mrs. Harrison"), was placed on a Performance Improvement Plan. See Ex. 23.061–062 (Doc. 31 at 61–62). Virginia Beach subsequently removed her from her teaching position in December 2014. Decision at 15; see also, e.g., Ex. 41.012 n.2 (Doc. 40 at 25).

Throughout 2014–2015, M.N.'s IEP team met several times to craft an IEP for PAMS but was unsuccessful in agreeing on a new IEP. These meetings occurred on December 8, 2014, and several dates in 2015: January 22, February 5, March 23, March 30, April 2, and June 17, 2015. See Ex. B031 (Doc. 22 at 32); Ex. A031 (Doc. 21 at 36). During this time, M.N.'s parents also

paid for tutoring and social skills classes to supplement M.N.'s education at Red Mill. See Ex. B309–21 (Doc. 24 at 92–98; Doc. 25 at 1–6). On August 10, 2015, M.N.'s parents timely noticed Virginia Beach of their intent to unilaterally place M.N. at CBA, a private school, should Virginia Beach not agree to private day placement. Ex. 41.005–006 (Doc. 40 at 18–19). On August 25, 2015, Virginia Beach rejected the parents' request for private day placement. Ex. B057–58 (Doc. 22 at 58–59).

During 2015–2016, Virginia Beach and M.N.'s parents agreed on multiple evaluations of M.N. in support of ongoing IEP discussion, but they were still unable to reach agreement on a new IEP despite numerous additional meetings. Agreed evaluation topics included occupational therapy, physical therapy, sociocultural evaluation, and updated medical, educational, and observational reports. Ex. B186 (Doc. 23 at 65). The parents also paid for multiple independent evaluations in those categories in addition to the school's evaluations. See, e.g., Ex. C172–204, C217–229 (Doc. 36 at 1–33, 46–58). After all of those evaluations and additional IEP meetings, the last proposed IEP for this school year was the one that Virginia Beach dated June 9, 2016, and offered to M.N.'s parents on June 23, 2016. Trial Tr. (Doc. 42) (hereinafter "Tr.") at 5:19–23.

On July 11, 2016, M.N.'s parents filed a due process complaint pursuant to the IDEA with the Virginia Department of Education. Decision at 2. The Virginia Department of Education appointed a Hearing Officer, who heard the case on September 12–14, 2016. Id. The Parties presented four (4) issues to the administrative hearing officer:

> Whether or not the local education agency (LEA) has properly implemented an individual educational program (IEP) for the student.
> Whether or not the LEA is providing the student with a free appropriate public education (FAPE).
> Whether or not the LEA provided sufficient educational evaluations to formulate an appropriate IEP within a reasonable time.

Whether or not private day placement is required for the student to receive a FAPE.

Id. at 12. The Hearing Officer entered her decision in the matter on October 30, 2016. Id. at 30. She made four (4) key findings: that Virginia Beach had not properly implemented an IEP for M.N., that Virginia Beach failed to offer FAPE to M.N., that Virginia Beach provided sufficient evaluations to form an IEP within a reasonable time, and that private day placement was required for 2015–2016 and for 2016–2017. See generally id. She ordered reimbursement for two (2) years of private day placement, denied reimbursement for tutoring, and deferred any decision on attorneys' fees to a reviewing court on the ground that she lacked statutory authority to grant such an award. See id. at 29–30.

On January 27, 2017, M.N. timely filed a complaint with this Court seeking an award of attorneys' fees for prevailing in an IDEA due process hearing. Doc. 1. On January 30, 2017, Virginia Beach filed a separate action seeking reversal of the Hearing Officer's decisions in favor of M.N. No. 2:17cv66, Doc. 1 ("VB Counterclaim"). On May 22, 2017, M.N. filed an Amended Complaint in this action with leave of Court. Doc. 11. M.N. filed a counterclaim in the companion action seeking the tutoring and social skills fees denied by the Hearing Officer. No. 2:17cv66, Doc. 8.

The Court entered a combined scheduling Order for both actions on June 16, 2017, directing the Parties to file cross-motions for summary judgment on the administrative record,[2]

---

[2] The Fourth Circuit has on occasion expressed some concern that IDEA civil actions are not appeals and that the motions in such actions are not properly captioned as summary judgment motions. See, e.g., Cty. Sch. Bd. of Henrico Cty., Virginia v. Z.P. ex rel. R.P., 399 F.3d 298, 309 (4th Cir. 2005). It has inconsistently expressed this view, though, at times affirming the practice while noting IDEA specific rules. See, e.g., Schaffer ex rel. Schaffer v. Weast, 554 F.3d 470, 479 (4th Cir. 2009); A.B. ex rel. D.B. v. Lawson, 354 F.3d 315, 324–25 (4th Cir. 2004). It has yet to resolve this inconsistency, as some panels have observed in commenting on the relevant standard of review. See O.S. v. Fairfax Cty. Sch. Bd., 804 F.3d 354, 360 n.2 (4th Cir. 2015). Because this Court must generally give a type of deference to the factual findings of the underlying administrative decision, subject to a limited exception, these proceedings are very similar to administrative appeals, even if they are not exactly the same. Thus, this

with the briefing on both motions complete by November 10, 2017. Doc. 10. The Parties filed

the administrative record on July 28, 2017. Docs. 21–42. The Court FOUND that the second

action was a compulsory counterclaim to the first action and consolidated the cases on August

21, 2017. Doc. 46. The Parties supplemented the record with leave of Court on August 28,

2017. Docs. 48–49. The Parties timely completed briefing for the cross-motions for summary

judgment, and no Party requested an opportunity to present additional evidence.

## II.    LEGAL STANDARD

The IDEA offers federal funding to states in exchange for their agreement to educate

disabled students in accordance with certain statutory criteria. See 20 U.S.C. § 1411. One of

those criteria is that the state provide a "free appropriate public education" ("FAPE") to all

disabled students residing in the state. See id. § 1412(a)(1). The statute defines FAPE as

follows:

> special education and related services that--
> (A) have been provided at public expense, under public supervision and direction,
> and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school
> education in the State involved; and
> (D) are provided in conformity with the individualized education program
> required under section 1414(d) of this title.

Id. § 1401(9). The chapter further states that "[t]he term 'individualized education program' or

'IEP' means a written statement for each child with a disability that is developed, reviewed, and

revised in accordance with this section and that includes" several categories of information. Id.

§ 1414(a)(5)(1)(A). While it contains a lengthy list of requirements, it generally provides that

"[a]n appropriate IEP must contain statements concerning a disabled child's level of functioning,

set forth measurable annual achievement goals, describe the services to be provided, and

---

District has generally labelled the motions as ones for summary judgment while acknowledging the applicable IDEA standards of review in the absence of any definitive guidance to the contrary from the Fourth Circuit.

establish objective criteria for evaluating the child's progress." MM ex rel. DM v. Sch. Dist. of Greenville Cty., 303 F.3d 523, 527 (4th Cir. 2002) (citing 20 U.S.C. § 1414(d)(1)(A) (2017)).

The IDEA further provides that any party may present a due process complaint to the appropriate state or local education agency "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child" and "have an opportunity for an impartial due process hearing . . . ." Id. § 1415(b)(6), (f)(1). Parties aggrieved by the findings and decision who does not have a further right of appeal may file a civil action in federal court regarding the due process complaint. Id. § 1415(i)(2).

When reviewing IDEA administrative proceedings, a court applies "modified de novo review, giving due weight to the underlying administrative proceedings." O.S., 804 F.3d at 360 (quoting M.S. ex rel. Simchick v. Fairfax Cty. Sch. Bd., 553 F.3d 315, 323 (4th Cir. 2009)) (internal quotation marks omitted). Due weight in this context means that "findings of fact made in administrative proceedings are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why." MM, 303 F.3d at 531 (citing Doyle v. Arlington County Sch. Bd., 953 F.2d 100, 103 (4th Cir. 1991)). Credibility determinations, both explicit and implicit, are part of the findings that a reviewing court must afford due weight. Z.P., 399 F.3d at 306–07. Deference does not apply if the findings are not "regularly made." Id. at 305 (citing Doyle, 953 F.2d at 105). "Factual findings are not 'regularly made' if they are reached through a process that is 'far from the accepted norm of a fact-finding process.'" Id. (quoting Doyle, 953 F.2d at 104); see also J.P. ex rel. Peterson v. Cty. Sch. Bd. of Hanover Cty., Va., 516 F.3d 254, 259 (4th Cir. 2008) (describing a hearing officer's findings as regularly made when "allowing the parents and the School Board to present evidence and make arguments,

and . . . by all indications resolv[ing] the factual questions in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating his responsibility to decide the case.") The party challenging the hearing officer's decision bears the burden of proof. A.K. ex rel. J.K. v. Alexandria City Sch. Bd., 484 F.3d 672, 679 (4th Cir. 2007) (citing Spielberg ex rel. Spielberg v. Henrico County Pub. Sch., 853 F.2d 256, 258 n.2 (4th Cir. 1988)).

### III.   ANALYSIS

The primary issue in this case is whether M.N.'s parents properly removed her from Virginia Beach public schools to a private school. "When a state receiving IDEA funding fails to provide a FAPE, the child's parent may remove the child to a private school and then seek tuition reimbursement from the state." A.K., 484 F.3d at 679 (quoting A.B., 354 F.3d at 320). "The parent may recover if (1) the proposed IEP was inadequate to offer the child a FAPE and (2) the private education services obtained by the parents were appropriate to the child's needs." Id. (quoting same).

The underlying issue in this case is that the Parties disagree about whether to trust Virginia Beach's staff, and they engage in many different arguments that are proxy fights about that issue.[3]   These arguments began when Virginia Beach failed to provide M.N. a FAPE in 2014–2015, as explained infra. It did not admit that failure, and it crafted IEPs in the belief that its staff at another school would remedy any deficiencies going forward. The parents do not trust Virginia Beach and want a detailed IEP to fix implementation problems. While the Court does not pass judgment on whether Virginia Beach could ever provide a FAPE, the Court agrees with the Hearing Officer that Virginia Beach at least failed to offer FAPE in its last proposed IEPs for

---

[3] For example, one frequent fight in the records is over whether M.N. needs social skills goals. Virginia Beach insists that their social skills lunchtime program at PAMS is enough and that no literal goals are needed, while M.N.'s parents repeatedly insist that explicit written goals are needed. Neither Party appears to have a good reason why the other Party's idea is unacceptable beyond their respective positions on trusting Virginia Beach's staff.

2015–2016 and 2016–2017 by promoting M.N. too quickly and by offering insufficient detail, respectively, as explained in further detail infra.

Virginia Beach challenges the Hearing Officer's decision on two (2) grounds: that the Hearing Officer failed to give due deference to professional educators, and that several of the Hearing Officer's findings are not supported by the evidence. See VB Counterclaim ¶¶ 51–56. In its Motion for Summary Judgment, Virginia Beach expands the first ground for relief to encompass five (5) different reasons why the Hearing Officer's findings failed to comport with legal standards and are not entitled to deference, and it reduces the second ground to dispute two (2) specific findings: that the 2014–2015 "stay-put" was not properly implemented, and that the last proposed IEP did not offer M.N. a FAPE. See generally Doc. 55. The incongruity between the two (2) documents leaves Virginia Beach's arguments open to some interpretation. For example, Virginia Beach's Counterclaim challenges the finding that CBA could provide M.N. a FAPE, but its Motion for Summary Judgment only challenges the legal standard applied to that finding and never challenges the finding itself. Compare VB Counterclaim ¶¶ 56(r), (t) with Doc. 55 at 24. Thus, the Court attempts to organize and address Virginia Beach's actual challenges as best as is cognizable based on the briefing.[4]

## A.    Whether the Hearing Officer's Findings Are Entitled to Deference

Virginia Beach misunderstands this Circuit's law on deference in IDEA proceedings, and that mistake undermines its arguments. As explained supra, a hearing officer's findings are entitled to deference when "regularly made." See supra Part II. Instead of citing that body of

---

[4] M.N. seems to recognize the incongruence between the two (2) documents as well, observing that Virginia Beach's Motion "raise[s] new claims that were not a part of the original appeal of the Special Education Due Process Hearing Officer's decision." Doc. 59 at 10. In all fairness to Virginia Beach, many of its "new" arguments are not truly new claims, as they merely affect the level of deference this Court applies in considering the Hearing Officer's factual findings. See, e.g., Doc. 55 at 16–17, 19–20 (contesting the Hearing Officer's methodology for assessing FAPE); see also VB Counterclaim ¶ 56(n), (p), (s), (t) (contesting whether VB offered a FAPE more broadly). M.N. attempts to address the arguments raised in total between the two (2) incongruent documents notwithstanding her objection, and thus, the Court has full briefing before it on all relevant issues.

case law, Virginia Beach cites <u>A.K.</u>, 484 F.3d at 679–80 (citing <u>Z.P.</u>, 399 F.3d at 309) for the proposition that "[a] hearing officer's finding regarding the sufficiency of an IEP 'is not entitled to deference to the extent that it is based upon application of an incorrect legal standard.'" Doc. 55 at 15 (quoting <u>A.K.</u>, 484 F.3d at 679–80). That selective quoting of <u>A.K.</u> led Virginia Beach to an incorrect reading of the case law. <u>A.K.</u> stands for the proposition that a <u>district court's</u> finding is not entitled to deference from appellate courts when based on the incorrect legal standard. <u>See</u> <u>A.K.</u>, 494 F.3d at 679–80 (discussing the standard of review for a district court's order). This distinction matters because the Fourth Circuit applies a different standard of review to a Hearing Officer's decision than it applies to a District Court's opinion. <u>See</u> <u>J.P.</u>, 516 F.3d at 262. For example, the Fourth Circuit requires detailed analysis from a District Court while allowing "bare-boned" findings from a Hearing Officer to suffice. <u>Id.</u> If a Hearing Officer fails to apply the correct legal standard, and that failure leaves the record devoid of any findings that would allow a reviewing court to reach a conclusion on the correct legal standard, then the Fourth Circuit requires <u>remand</u> to the Hearing Officer, not simply assessment without deference. <u>JH</u>, 326 F.3d at 568; <u>see also</u> <u>J.P.</u>, 516 F.3d at 262 n.3 (elaborating on the Fourth Circuit's understanding of the requirements for remand). Because Virginia Beach's arguments do not meaningfully contest whether the Hearing Officer's findings were regularly made, this Court must give the Hearing Officer's findings due weight deference. The only question for the Court to address in this section is whether any of Virginia Beach's criticisms of the Hearing Officer's decision demonstrate flaws requiring remand.

### i.    *Separate Consideration of Each School Year*

Two (2) of Virginia Beach's arguments address essentially the same issue: whether the Hearing Officer separately considered 2014–2015, 2015–2016, and 2016–2017. <u>See</u> Doc. 55 at

16–17, 19–20. "[T]he finding of an invalid IEP for a particular school year is a necessary precursor to reimbursement for a parental placement." M.S., 553 F.3d at 324.

Virginia Beach rightly criticizes deficiencies in the Hearing Officer's decision. The Hearing Officer began with the accurate statement that the last proposed IEP was the IEP offered on June 23, 2016, as corrected on July 7, 2016. Decision at 12. She then stated that the last detailed statement of disagreement occurred on May 17, 2015, but cited to a different statement from March 2015. See id. at 11 (citing Ex. 12.001); see also Ex. 12.001 (Doc. 30 at 1) (the statement from March 2015 listing concerns with the draft IEP); Ex. B734 (Doc. 27 at 6) (the statement of disagreement from May 17, 2015). She also described the March 2015 statement as a twenty (20) page commentary on the last proposed IEP, which was incorrect for two (2) reasons: the exhibit encompassed two (2) different statements, and both of them predated the last proposed IEP by over a year. See Decision at 17; see also Ex. 12.001–020 (Doc. 30 at 1–20). She then made her findings regarding the "last proposed IEP" without any dates or citations, leaving an open question of whether she understood that the cited statements did not apply to the last proposed IEP. Decision at 20. She also considered implementation of the stay-put IEP as part of determining the sufficiency of the last proposed IEP, which was not proper at all. See id. (offering that errant analysis); see also M.S., 553 F.3d at 324 (requiring that IEP findings be particularized by school year). The Hearing Officer's decision is a bit confusing in its description of important terms and thus requires some interpretation.

Although these deficiencies are concerning, they do not amount to errors requiring remand. The harsh reading by Virginia Beach is that the Hearing Officer failed to consider any draft IEPs except the ones criticized in Ex. 12.001–020, while the charitable reading by M.N. is that the Hearing Officer found that the same violations afflicted the January 2015 IEP and all

subsequent ones. A hearing officer cannot fail to consider each year's IEPs, but a hearing officer may criticize all of them with the same violations. See, e.g., M.S., 553 F.3d at 323 (observing, without comment, that a hearing officer found three (3) IEPs invalid for the same reasons). The only limit is that a hearing officer must review each IEP based on evidence that arose before the creation of that IEP. See Schaffer, 554 F.3d at 477 (emphasizing that review of an IEP is prospective, not retrospective). In view of that standard, M.N.'s reading is the more accurate interpretation of the decision in this case. The Hearing Officer at one point referred to all of the draft IEPs cumulatively:

> The IEPs proposed by VBCPS dropped eight goals and sixteen accommodations that the parents' contend [M.N.] continued to need. (Tr. pg. 405) As previously mentioned, the IEP moved occupational therapy and physical therapy from the services category to accommodations. (Tr. pg. 396) When confronted, VBCPS justified the OT and PT changes by claiming that is the way it is routinely done in VBCPS.

Decision at 18–19. She also concluded that the IEP team failed to propose goals that would remedy M.N.'s below grade level performance:

> If a child, such as [M.N.,] is performing below grade level, that child needs to receive specialized instruction. It is the responsibility of the IEP team to develop annual goals to close the gap. This did not occur.

Decision at 20. She then offered explicit findings on the "last proposed IEP" to determine whether Virginia Beach offered FAPE. Id. at 20, 27. It seems that she intended her criticisms of the last proposed IEP to be criticisms of all draft IEPs up to and including the last proposed one. Because that apparent approach is an appropriate approach, any errors under this topic are not severe enough to deprive this Court of reviewable findings.

### ii. Procedural Violations

Virginia Beach's next challenge concerns whether the Hearing Officer improperly relied on procedural violations for finding a denial of FAPE. Doc. 55 at 17–19. "[A]n alleged

procedural violation of the IDEA, without more, is insufficient to show a school failed to provide a child with FAPE." Bobby v. Sch. Bd. of City of Norfolk, No. 2:13cv714, 2014 WL 3101927, at *8 (E.D. Va. July 7, 2014). "Rather, when procedural violations are alleged, they 'must actually interfere with the provision of a FAPE to that child.'" Id. (quoting DiBuo ex rel. DiBuo v. Bd. of Educ. of Worcester Cnty., 309 F.3d 184, 190 (4th Cir. 2002)). The Hearing Officer's findings at issue stated as follows:

> I FIND that the VBCPS' last proposed IEP failed to meet [M.N.'s] complex academic and functional needs by rejecting parental concerns, minimizing the severity of [M.N.'s] disabilities, providing only cursory review of the results of independent evaluations; and by failing to include agreed-upon revisions to the IEP drafts.

Decision at 20. Virginia Beach argues that some of these findings are not even procedural violations, as it is not required to adopt all of the parents' suggestions. Doc. 55 at 18–19. It further insists that to the extent it committed any procedural violations, none led to the denial of FAPE in the substance of the IEPs for 2015–2016 and for 2016–2017. Id.

Virginia Beach has not raised enough of a flaw to require remand. It is true that "rejecting parental concerns," "providing only cursory review of the results of independent evaluations," and "failing to include agreed-upon revisions to the IEP drafts" are procedural errors, and the Hearing Officer does not offer any analysis as to why those violations led to denial of FAPE here. It is less clear that "minimizing the severity of [M.N.'s] disabilities" is procedural, as an IEP that provides services for a lower level of disability would fail to provide FAPE. Virginia Beach offers no analysis directed at that particular finding, instead taking the view that all of the Hearing Officer's findings implemented a parental veto. See Doc. 55 at 18. This argument is analogous to the previous one because Virginia Beach takes a dim view of the Hearing Officer's decision, believing that she favored the parents and did not understand the

substance at issue. See id. Because the Court believes that the better reading of the Hearing Officer's decision is that she criticized all of the draft IEPs' failure to address M.N.'s needs, the Court further **FINDS** that "minimizing the severity of [M.N.'s] disabilities" is a substantive criticism similar to other findings in the decision. Thus, any errors under this topic are not severe enough to deprive this Court of reviewable findings.

### iii.    Deference to Educators

Virginia Beach contends that the Hearing Officer failed to give the required deference to professional educators in her findings. The Supreme Court has repeatedly cautioned that courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review." Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1, 137 S. Ct. 988, 1001 (2017); Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206 (1982). The Fourth Circuit has extended this deference to the administrative proceedings. Z.P., 399 F.3d at 307 ("We recognize, of course, that at all levels of an IDEA proceeding, the opinions of the professional educators are entitled to respect."). This deference does not mean that a hearing officer must decide all factual disputes in favor of the school. See id. For example, in Z.P., the Fourth Circuit explained that the hearing officer was obligated to accept the educators' testimony regarding the effectiveness of their own program but was not obligated to accept testimony regarding the propriety of their program for the particular student at issue. See id. at 308. It observed that "[t]o conclude that the hearing officer erred simply because he did not accept the testimony of the School Board's witnesses, an argument that the School Board comes very close to making, would render meaningless the due process rights guaranteed to parents by the IDEA." Id. at 307 (citing School Bd. v. Malone, 762 F.2d 1210, 1217 (4th Cir. 1985)).

Virginia Beach raises three (3) issues that it believes demonstrate no deference. Doc. 55 at 20–23. First, it argues that the Hearing Officer improperly credited the testimony of the parents alone over the testimony of special education case manager Nikki Moore ("Ms. Moore") in assessing the adequacy of goals and accommodations in draft IEPs. Id. at 21–22. Second, it contends that the Hearing Officer failed to address the credibility of all of the relevant school witnesses when deciding whether M.N. needed smaller class size or a private school placement. Id. at 22–23. Third, it criticizes the findings about whether M.N. could be heard at PAMS as substituting the Hearing Officer's own observations for the testimony of the school officials. Id. at 23.

This Court's deference to the Hearing Officer's credibility determinations undermines Virginia Beach's arguments here. As M.N. recognizes, this Court must defer both to explicit and implicit credibility determinations. See id. at 17 (quoting Z.P., 399 F.3d at 307). Virginia Beach does not offer any reasonable basis for the Court to reverse those determinations.

For the issue of goals and accommodations, the Parties are reprising their familiar arguments of whether the Hearing Officer considered the substance of the IEPs. M.N.'s expert witnesses criticized the adequacy of the goals and accommodations. See, e.g., Tr. at 63:2–9; 80:3–18. The Hearing Officer's decision does not explicitly rely on the parents' testimony alone, and her findings on the adequacy of goals and accommodations implicitly credit the testimony of M.N.'s experts. Once the Hearing Officer found that special education case manager Nikki Moore ("Ms. Moore") was not credible, she also implicitly found that other school officials on the IEP team lost credibility on goals and accommodations because they relied on Ms. Moore's data.[5] Her commentary on Dr. Joey Phillips ("Dr. Phillips"), assistant principal at PAMS,

---

[5] The fall semester data was actually from Mrs. Harrison, while the spring semester data was from Ms. Moore. Tr. at 354:4–7. In light of Mrs. Harrison's performance improvement plan and subsequent firing, the Hearing Officer

supports this reading because she <u>only</u> discredits him due to his reliance on that data. <u>See</u> Decision at 26. Thus, the Hearing Officer's finding regarding Ms. Moore's credibility undermines Virginia Beach's arguments here.

For the issue of smaller class sizes, the Hearing Officer was not required to make explicit credibility determinations on every witness because her implicit determinations hold the same weight here. <u>See</u> <u>Z.P.</u>, 399 F.3d at 307. Virginia Beach does not address that legal standard, and thus, its argument here fails.

For the issue of hearing M.N. in a classroom, the Hearing Officer relies on three (3) different sources of evidence: the documented lack of volume and projection in M.N.'s voice, her personal observations, and the testimony of Ms. Judy Jankowski ("Ms. Jankowski"), the educational administrator at CBA, who testified that CBA had to implement a rule that everyone is silent when M.N. speaks in order to hear her. <u>See</u> Decision at 26. Virginia Beach cites no authority for why the Hearing Officer cannot use her own observations to make credibility determinations, and it is not at all clear that deciding how audible M.N. is in a classroom amounts to imposing her own educational policy on Virginia Beach. The Court need not decide that issue, though, because that was not the sole basis for the Hearing Officer's decision.[6] Thus, any errors under this topic are not severe enough to deprive this Court of reviewable findings.

<em>iv.  Analysis of Private Placement</em>

Virginia Beach contends that the Hearing Officer engaged in an impermissible compare-and-contrast analysis to determine whether CBA was an appropriate placement. Doc. 55 at 24.

---

explicitly offered a dim view of Mrs. Harrison's abilities and implicitly offered a dim view of her data, too. Virginia Beach makes no attempt to defend Mrs. Harrison's data, likely recognizing this problem.

[6] Furthermore, it is not at all clear whether Virginia Beach's witnesses receive any net deference when the contrasting witness testimony (Ms. Jankowski) is also from an educator. Virginia Beach disregards the Hearing Officer's reference to Ms. Jankowski's testimony and does not argue this issue, and the Court need not reach it, either.

Virginia Beach's authority in support of that argument does not extend as far as it represents, though. It is correct that parents cannot demonstrate that a proposed placement fails to provide FAPE through evidence of a better program because "the [IDEA] does not require the 'furnishing of every special service necessary to maximize each handicapped child's potential.'" MM, 303 F.3d at 527 (quoting Hartmann v. Loudoun County Bd. of Educ., 118 F.3d 996, 1001 (4th Cir. 1997) (quoting Rowley, 458 U.S. at 199–200)); see also Hessler by Britt v. State Bd. of Educ. of Maryland, 700 F.2d 134, 139 (4th Cir. 1983) ("In sum, because a given educational placement is allegedly more appropriate than another, it does not follow that the less appropriate program is not 'appropriate' within the meaning of the Act.") Nevertheless, it does not follow from that proposition that compare-and-contrast is always impermissible. The primary case cited by Virginia Beach merely bans compare-and-contrast in a case where (1) it is undisputed that the public school cannot provide FAPE, and the parties are disputing between private school placements; and (2) the Hearing Officer performed no substantive analysis otherwise. See Sch. Bd. of the City of Suffolk v. Rose, 133 F. Supp. 3d 803, 827 (E.D. Va. 2015). That case does not purport to establish any rule regarding compare-and-contrast analysis, instead only observing that a Hearing Officer cannot substitute that analysis for the required analysis. See id.

The Hearing Officer's decision satisfied the correct legal standard. She primarily assessed whether CBA offers FAPE based on M.N.'s actual performance. Decision at 27. Actual performance is a relevant factor, but not the only factor, in determining whether a placement offers FAPE. See M.S., 553 F.3d at 326–27. The Hearing Officer also applied several other factors to support her decision:

> CBA can provide the services that [M.N.] requires. They provide [M.N.] with the flexibility to rearrange her scheduling and programs as she progresses. She is able to be heard and her social skills are improving. Through the direct services provided at CBA, [M.N.'s] full array of disabilities are addressed. The small

classroom and small school size provide her the individualized attention she requires to receive educational benefit.

Decision at 27. Her recitation of facts on the pages prior to these findings does not alter the conclusion that these findings show independent analysis of CBA, even if the prior facts compare CBA with PAMS. Thus, any errors under this topic are not severe enough to deprive this Court of reviewable findings.

Despite the lack of any errors requiring remand here, a certain related error deserves noting at this stage. Virginia Beach's brief quotes the related error:

> Here, the Hearing Officer engaged in this very "compare and contrast" analysis that courts caution against. The Hearing Officer expressly found that:
> [T]he educational benefits available to [M.N.] in a traditional, inclusive or special education classroom at Princess Anne Middle School, even if supplemented with appropriate aids and services, **in comparison to** the educational benefits she will receive from CBA, are negligible.

Doc. 55 at 24 (quoting Decision at 27 (emphasis added)). Virginia Beach tries to use the analysis regarding PAMS to impugn the analysis regarding CBA. See id. An error regarding PAMS does not compel any result regarding the Hearing Officer's decision. If the draft IEPs denied FAPE, and CBA provided FAPE, then this Court need not decide whether PAMS could offer FAPE apart from the content of the draft IEPs. See A.K., 484 F.3d at 679 (noting that reimbursement for private placement relies on assessment of the IEP and of the adequacy of the private placement). Thus, the Court **FINDS** that the Hearing Officer erred in assessing PAMS through compare-and-contrast, but the Court need not take any other action on the issue because no finding on PAMS is necessary to the disposition of this case.

**B.      Whether the Hearing Officer's Findings Were Accurate**

After all of those procedural disputes, the Court can reach the merits of the case. This Order addresses the following issues in turn: the problems in 2014–2015, the two (2) school

years at issue in this case, whether CBA offered FAPE, and whether M.N. is entitled to tutoring fees reimbursement.

i.    *Implementation of the IEP for 2014–2015 and Whether Virginia Beach Provided FAPE*

Virginia Beach challenges the Hearing Officer's finding that it failed to properly implement the IEP for 2014–2015 such that it denied M.N. a FAPE, arguing that the finding was based solely on parent testimony. Doc. 55 at 25. Failure to implement a material portion of an IEP violates the IDEA, but failure to perfectly execute an IEP does not amount to denial of FAPE. See Sumter Cty. Sch. Dist. 17 v. Heffernan ex rel. TH, 642 F.3d 478, 484 (4th Cir. 2011) (citing agreement with the Fifth, Eighth, and Ninth Circuits).

Virginia Beach undermines its argument by selectively quoting the findings in the Hearing Officer's decision. The Hearing Officer's decision relied on four (4) facts. Decision at 14–15. First, she cited Mrs. Norman's testimony. Id. at 14. Second, she cited an admission from school officials at an IEP meeting that they failed to implement portions of the IEP. Id. Third, she cited M.N.'s regression evidenced by test results. Id. Finally, she cited the fact that M.N.'s fall 2014 teacher was placed on a performance improvement plan when she "failed to collect and effectively analyze data to meet the diverse needs of her special education students which has led to ineffective planning and instructional delivery" and was later removed from her position. Id. at 14–15 (quoting Exs. 23.061–062 (Doc. 31 at 61–62)). Contrary to Virginia Beach's argument, the Hearing Officer did not rely solely on parent testimony but instead relied on a combination of Mrs. Norman's testimony with several other pieces of evidence to reach a conclusion regarding implementation of the IEP in 2014–2015. Thus, the Court **FINDS** that Virginia Beach failed to implement the 2014–2015 IEP.

The Fourth Circuit has no bright line for what constitutes a material failure to implement an IEP. Sumter Cty. Sch. Dist. 17, 642 F.3d at 486. Despite the lack of a bright line, failure to consistently implement half the accommodations in an IEP is a material failure because it defeats the purpose of the IEP. "Congress did not intend that a school system could discharge its duty . . . by providing a program that produces some minimal academic advancement, no matter how trivial." Id. (quoting Hall ex rel. Hall v. Vance Cnty. Bd. of Educ., 774 F.2d 629, 636 (4th Cir. 1985)). Thus, the Court **FINDS** that Virginia Beach materially failed to implement the 2014–2015 IEP such that it denied FAPE to M.N because its ineffective teacher failed to implement half the accommodations in the IEP, harming M.N.'s academic progress throughout that entire school year.

  *ii.  Whether Virginia Beach Offered FAPE in 2015–2016 and 2016–2017*

**a. 2015–2016**

  While the Hearing Officer's findings regarding the proposed IEPs are rather sparse, the Hearing Officer's credibility determination regarding Ms. Moore supports her findings. See Decision at 25. Virginia Beach's last proposed IEP for 2015–2016 based all three (3) of its key decisions — rejecting private day placement, rejecting retention for fifth grade, and rejecting a more restrictive environment for education — on Ms. Moore's data. See Ex. B057 (Doc 22 at 58) (citing that all three (3) decisions were based on the available data). The Hearing Officer did not believe Ms. Moore's data, agreed with CBA's assessment that the data reflected a need for retention in fifth grade, and further repeatedly expressed that M.N. currently needs a more restrictive environment. See, e.g., Decision at 24 (citing Hartmann, 118 F.3d 996, 26 IDELR 167 (4th Cir. 1997)).

Virginia Beach's disagreement with the decision is not unreasonable. The IDEA strongly encourages placing students in the LRE. See 20 U.S.C. § 1412(a)(5) (2018). This encouragement is not an unbreakable requirement, though, because the purpose of LRE is to ensure that schools seek integration of special education students with the rest of the school, not to harm the academic progress of special education students. See M.S., 553 F.3d at 327; see also 20 U.S.C. § 1412(a)(5)(A) (2018) ("To the maximum extent appropriate . . . ."). Virginia Beach's proposal for 2015–2016 may have been appropriate if M.N. had not experienced trouble with an ineffective teacher in fall 2014, but that trouble harmed her to a greater degree than was remediable with a regular LRE proposal.

Virginia Beach apparently read the last proposed IEPs in a better light than the Hearing Officer read them because it trusted in the ability of its staff to remedy M.N.'s problems during 2015–2016. The Court cannot assess Virginia Beach's proposal in that light, though, because it is restricted to considering the explicit terms of the IEP. A.K., 484 F.3d at 682. The Court FOUND that Virginia Beach failed to provide a FAPE to M.N. in fifth grade in 2014–2015. See supra Part III.B.i. In line with that finding, the Court further **FINDS** that Virginia Beach failed to offer M.N. a FAPE for 2015–2016 because it sought to place her in an academic program beyond her abilities — namely, sixth grade. The Court need not reach any of the other potential difficulties with the IEP in light of that finding, nor can it address the capabilities of PAMS staff.

**b.      2016–2017**

For the 2016–2017 last proposed IEP, the Hearing Officer's credibility determinations regarding some of M.N.'s witnesses support her finding that Virginia Beach failed to offer FAPE. Two (2) particular portions of her opinion are relevant. The first portion summarized the experts' testimony:

> Drs. Ling (Tr. pg. 15) Cotton (Tr. pg. 239) and Lucker (Tr. pg. 172) summarily
> testified that [M.N.] is more suited to learn in a small environment due to the way
> in which her many disabilities and medical conditions interact with one another.
> At this stage in her life, requires constant individualized instruction to keep
> focused and to learn. Dr. Ling, a neurologist who tested in September of 2015,
> testified that experiences disorganization, processing weaknesses and difficulties
> with physical stamina. (Jt. Ex. C172-197)

Decision at 25. The second portion credits the testimony of Dr. William D. Ling ("Dr. Ling"), a

licensed clinical psychologist, and Dr. Jay Lucker ("Dr. Lucker"), an audiologist:

> Testimony from [M.N.'s] doctors, including the evaluations from Dr. Ling and
> Dr. Lucker, clearly indicate that [M.N.] needs continuous specialized and
> individual attention in a smaller environment to receive educational benefit.
> Princess Anne Middle School with its 1,470 student population would not
> educationally benefit [M.N.] regardless of how well-intended VBCPS may be. In
> her case, with her multiple neurological, mental, processing, cognitive and
> physical disabilities, at this stage in her life, [M.N.] requires the small school
> environment offered at CBA to effectively learn both academically and socially.
> CBA, however, is admonished to educate [M.N.] towards independence with the
> ultimate goal of returning her to public school. With no medical or cognitive
> setbacks, [M.N.] should be more mature and more prepared to handle the rigors of
> public school life after leaving CBA. Hopefully, via the educational benefits and
> the FAPE she receives from CBA, [M.N.] will learn how best to deal with her
> multiple disabilities and will have educationally and socially progressed and
> matured enough to attend a VBCPS public school.

Id. at 28. The Hearing Officer did not distinguish between the proposed IEPs and the school

years with this criticism, and this criticism was inappropriate for 2015–2016 because Dr. Ling's

and Dr. Lucker's reports were not available to Virginia Beach until October 2015 and August

2016, respectively. See Ex. C172 (Doc. 36 at 1); Ex. 15.001 (Doc. 30 at 33). A hearing officer

and a court must assess the adequacy of an IEP based on the information available at the time it

was written. See Schaffer, 554 F.3d at 477. Despite that error, the grade level issue for 2015–

2016 was sufficient to find a denial of FAPE under that IEP, as discussed infra, and at least Dr.

Ling's expert report was appropriate to consider for 2016–2017 because he completed his report

in advance of the last proposed IEP for that year. Dr. Lucker's report is also proper evidence in

this proceeding because it is only a records review that assesses what Virginia Beach should have known and done based on the information available for the last proposed IEP. See Ex. 15.001–002 (listing records reviewed). Furthermore, the Hearing Officer's view of these experts continues a clear theme throughout the record: M.N. needed different services than what Virginia Beach offered for now. The Hearing Officer stated that M.N. should be able to handle public school after some time at CBA as long as she suffered no setbacks there. Decision at 28. This finding expresses that the chief concern was that Virginia Beach did not propose adequate remedies in any IEP for the setback that M.N. suffered at Red Mill, and accordingly, that M.N.'s experts were credible in their assessment that the IEPs failed to offer FAPE.

Virginia Beach's arguments against these findings largely amount to preferring their own experts over M.N.'s experts. It extensively reviews Dr. Phillips's testimony regarding the IEP without addressing that the Hearing Officer found him credible but misled by his staff's unreliable data. Doc. 55 at 28–30. It also cites two (2) other Virginia Beach witnesses in support of the adequacy of its IEP without addressing the issue of implicit credibility findings. Id. at 30. It offers no persuasive analysis as to why the Court should accept either of the two (2) other witnesses' testimony. See id. Ms. Vasely's testimony about class size is an admissible opinion in opposition to the other witnesses, but the Hearing Officer found the other witnesses more credible. See id. Speech/language pathologist Michelle Galvin's ("Galvin's") testimony that M.N. could be heard in large classrooms was similarly admissible but contradicted both other testimony in the record and other sources of evidence discussed infra under the alleged procedural violations. See id.; see also supra Part III.A.iii. Failure to accept Virginia Beach's witnesses testimony, without more, is no basis for reversal of a Hearing Officer's credibility

findings. Z.P., 399 F.3d at 307 (citing Malone, 762 F.2d at 1217). Thus, Virginia Beach has provided no persuasive ground for the Court to reject the Hearing Officer's finding.

Further evidence in the record as to Dr. Ling's and Dr. Lucker's testimony also supports the Hearing Officer's findings. Dr. Ling testified that the June 9, 2016 IEP failed to identify "what specific intervention would be applied or provided to [M.N.] which can address the . . . processing demands and the limitations that she has." Tr. at 62:18–21. He also testified that some interventions can be implemented in a public school, while others cannot, and that Virginia Beach's data and the last proposed IEP for 2016–2017 indicated that Virginia Beach did not know what interventions to apply. Id. at 73:19–74:4. He also specified that a key issue is Virginia Beach's reliance on its own capabilities:

> "[W]hat I understand is the opinion of Virginia Beach in saying that some of the interventions that are necessary would be implemented through teachers, but there's no identification within the IEP of what interventions would be applied under the circumstances. And, therefore, the fit between what interventions are being presented and that between her capacities and what her needs are is not clear through the course of this IEP.

Id. at 63:2–9. He emphasized on cross-examination from Virginia Beach's counsel that he has participated in drafting IEPs that carry the level of specificity he believes is necessary. Id. at 80:3–18. Similarly, Dr. Lucker testified that the audiology goals were too vague and that several interventions were necessary. Id. at 211:5–214:13, 217:6–221:6. Perhaps the Hearing Officer's summary of their testimony was misguided because she emphasized the need for smaller classrooms, and neither witness seemed to focus on that issue, as Virginia Beach rightly argues. Dr. Ling observed in response to the Hearing Officer's questions that smaller classrooms on their own would be insufficient to address M.N.'s needs. Id. at 75:12–20. Despite that possible analytical error by the Hearing Officer, testimony from both witnesses supports the Hearing Officer's conclusion that "the final proposed IEP was insufficient to meet [M.N.'s] complex

needs . . . ." Decision at 27. Thus, the Court **FINDS** that the last proposed IEP for 2016–2017 failed to offer M.N. a FAPE because less detailed IEPs had not worked for M.N.'s complex needs, because Virginia Beach had the necessary information to address M.N.'s audiological disorders in detail in time for the IEP for 2016–2017, and because Virginia Beach failed to add that necessary level of detail.[7]

<em>iii.    Provision of FAPE by CBA</em>

As noted <u>supra</u>, Virginia Beach does not challenge this issue in its briefs beyond the procedural violation, but it raised a substantive challenge in other documents in this case and appears to have intended such a challenge here. <u>Compare</u> VB Counterclaim ¶¶ 56(r), (t) <u>with</u> Doc. 55 at 24. The Court also must find the provision of FAPE at CBA in order to grant M.N. reimbursement. <u>See</u> <u>A.K.</u>, 484 F.3d at 679 (quoting <u>A.B.</u>, 354 F.3d at 320). Thus, carefully reading the briefs, and in view of the relevant legal standard, the Court will address the substance of the question for purposes of entering findings on both of the required elements for reimbursement.

The Hearing Officer's findings support the conclusion that CBA offers FAPE. There are seven (7) relevant findings: improved test scores at CBA, flexibility to rearrange scheduled and programming, ability to be heard in the classroom, improved social skills, and access to direct services for disabilities, a small classroom, and a small school. Decision at 27. While Virginia Beach may be correct that improved test scores and a small classroom alone are insufficient to support the adequacy of CBA, Virginia Beach does not address the remainder of the relevant findings in any of its documents. Instead, it emphasizes that "school population and class size" were the key factors in the Hearing Officer's decision. Doc. 66 at 5. This view of the Hearing

---

[7] This finding does not mean that a very detailed IEP is always necessary for every student. Further detail is necessary for the IEP to offer FAPE in this instance because of the particular facts in M.N.'s history with Virginia Beach.

Officer's decision is based on some of the Hearing Officer's commentary scattered throughout the transcript and the decision. Nevertheless, this view also does not relieve Virginia Beach of the obligation to address the other findings, no matter how much weight it believes that the Hearing Officer attributed to her own findings. The seven (7) findings cumulatively reflect that CBA offered specific interventions needed to remedy M.N.'s learning deficiencies from her bad year in Virginia Beach schools, and no evidence in the record contradicts those findings. Thus, the Court **FINDS** that CBA offered FAPE to M.N.

*iv.    Alternative Damages Theory: Compensatory Damages*

M.N. alternatively argues that the Hearing Officer properly awarded compensatory education, either for 2016–2017 or for both 2015–2016 and 2016–2017 depending on the brief. See Doc. 53 at 11 (making the former argument); Doc. 59 at 20 (making the latter argument). Because the Court FOUND that Virginia Beach failed to offer FAPE to M.N. in its respective last proposed IEPs for both school years, M.N. is entitled to reimbursement for unilateral private placement for both of those years, and the issue of compensatory education is **MOOT**.

*v.    Tutoring Fees*

Although Virginia Beach has the most significant disagreements with the Hearing Officer's decision, M.N. also has a disagreement, as she seeks reversal of the Hearing Officer's denial of reimbursement for tutoring and social skills groups during 2014–2015. Doc. 53 at 10. The Hearing Officer found as follows:

> In regard to the parents' prayer for reimbursement for tutoring and social skills training, these tools served to benefit [M.N.] with or without any actions on the part of VBCPS. The parents sought these tools to support [M.N.] and to help her excel, regardless of the actions of VBCPS. There will be no reimbursement for tutoring or social skills training. I FIND that the parents did not meet their burden on this issue, therefore relief is denied.

Decision at 22. M.N. argues that those fees were necessary to remedy Virginia Beach's failure to provide FAPE during that school year. Doc. 53 at 10. She cites Florence Cty. Sch. Dist. Four v. Carter By & Through Carter, 510 U.S. 7 (1993) for the proposition that all appropriate private services are reimbursable after denial of FAPE. See id.; see also id. at 8. Virginia Beach does not meaningfully oppose this argument beyond its general assertions that M.N. is not entitled to any reimbursement. See generally Docs. 55, 66.

M.N.'s argument is problematic because she seeks a highly unusual remedy, and an award of tutoring fees would overcompensate her in addition to the other awards in this case. Florence stands for the proposition that a court who finds a violation of IDEA "is authorized to 'grant such relief as the court determines is appropriate." Florence, 510 U.S. at 15–16 (quoting 20 U.S.C. § 1415(e)(2) (currently codified at § 1415(i)(2)(C)(iii))). It further cautions that a court must consider the "appropriate and reasonable" level of reimbursement and may even deny full reimbursement for tuition if it finds such expenses unreasonable. Id. at 16. M.N. cites no case law, nor has the Court found any, where a court reimbursed tutoring services during the school year, as opposed to reimbursing unilateral private school placement. Furthermore, the Court already FOUND that CBA offered the required remediation, and it is not at all clear that the tutoring was necessary or even helpful given M.N.'s poor academic performance during 2014–2015. Thus, the Court **FINDS** that M.N. is not entitled to reimbursement for tutoring and social skills training and **DENIES** such reimbursement.

## C.     Whether M.N. is Entitled to Attorney's Fees

Neither Party disputes that the Court has discretion to award attorney's fees to M.N. if she is the prevailing party. See Doc. 53 at 11; Doc. 55 at 31. The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs" to her parents. 20

U.S.C. § 1415(i)(3)(B)(i). Because M.N. is suing by and through her parents, any award of fees is inevitably payable to them. Based on its decisions in M.N.'s favor, the Court **FINDS** that M.N. is the prevailing party and **GRANTS** attorney's fees. M.N. must file her Motion for Attorneys' Fees with appropriate supporting evidence. Virginia Beach will have ten (10) days from receipt of the Motion for Attorneys' Fees to respond with appropriate supporting evidence.

## IV.    CONCLUSION

For the reasons stated herein, the Court **AFFIRMS** the decision of the Hearing Officer and **FINDS** as follows:

- that Virginia Beach materially failed to implement the 2014–2015 IEP such that it denied a free appropriate public education ("FAPE") to M.N.;

- that Virginia Beach failed to offer M.N. a FAPE for 2015–2016 because it sought to place her in an academic program beyond her abilities, namely, sixth grade;

- that the last proposed IEP for 2016–2017 failed to offer M.N. a FAPE because less detailed IEPs had not worked for M.N.'s complex needs, because Virginia Beach had the necessary information to address M.N.'s audiological disorders in detail in time for the IEP for 2016–2017, and because Virginia Beach failed to add that necessary level of detail;

- that Chesapeake Bay Academy ("CBA") offered FAPE to M.N.; and

- that M.N. is not entitled to reimbursement for tutoring and social skills training.

In accordance, with those findings, the Court **GRANTS** Plaintiff's/Counter-Defendant's Motion for Summary Judgment, Doc. 52, **IN PART**, entering judgment in favor of Plaintiff/Counter-Defendant for reimbursement for tuition at Chesapeake Bay Academy for 2015–2016 and 2016–2017, and **GRANTS** Defendant's/Counter-Plaintiff's Cross-Motion for Summary Judgment,

Doc. 54, **IN PART**, denying reimbursement for tutoring and social skills training. The Court also **GRANTS** attorneys' fees by M.N., pending filing of an appropriate motion. Virginia Beach must respond to any motion for attorneys' fees within ten (10) days of receipt of the motion.

The Court further **ORDERS** that the stay-put will last through final resolution of this case.

The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff/Counter-Defendant M.N. for reimbursement for tuition at Chesapeake Bay Academy for 2015–2016 and 2016–2017. If the Parties cannot agree on this amount, they shall brief their positions simultaneously with their attorneys' fees briefings.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/

Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
February __5__, 2018